**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTOR MAXWELL | : | |
| | : | |
| Appellant | : | No. 2457 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 9, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002565-2017

BEFORE: STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.: **FILED MAY 14, 2019**

Victor Maxwell (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of two counts each of involuntary deviate sexual intercourse with a child (IDSI) and indecent assault of a complainant less than 13 years of age (indecent assault), and one count of endangering the welfare of a child (EWOC).[1] Appellant challenges the weight of the evidence. Upon review, we affirm.

The trial court recounted the evidence presented at trial:

> [Appellant] had an intimate relationship with the Victim's mother. Mother and [Appellant] met in 2001 and soon thereafter [Appellant] resided with Mother and her two daughters. Later, on May 31, 2005, Mother gave birth to a son. [Appellant's] cousin testified that [Appellant] lived with him in Philadelphia after the birth of his son. However, in his own testimony, [Appellant] admitted that he had his belongings at the home and "was back

---

[1] 18 Pa.C.S.A. §§ 3123(b), 3126(a)(7), and 4304(a)(1).

and forth a lot" up until 2007. By his own account, he left the home after 2006. The Victim and her Mother testified that in fact [Appellant] lived with them for about six years beginning in 2001 or 2002. All parties agreed that the relationship came to an end in March of 2007 when [Appellant] was arrested, apparently as a result of an unexplained altercation with Mother.

The Victim was born in 1998. She was nineteen years-old when she testified at trial. She testified that [Appellant] lived with her family for about six years. He was like a step-father to her and he was normally at home with her after school.

When [the Victim] was in fourth grade . . . [Appellant] lived with [the Victim], her sister, Mother and her young half-brother []. The Victim came home from school one afternoon and her mother was not yet home from work. [Appellant] was there and asked her if she "wanted to make some money." She said "yeah," and [Appellant] instructed her sister, who was younger, to go upstairs. He took the Victim to the basement where there was a queen-sized bed, couches and a TV and he sat her down on the mattress. He blindfolded her and stuck something in her mouth and told her to suck and not to bite. The Victim testified that it tasted like "syrup." She testified that she was nervous and "didn't know what was going on." [Appellant] told the Victim to "swallow" and then to wash her mouth out. He told her not to tell her mom about what had happened and gave her two dollars.

The next day a second incident occurred. The Victim arrived at home from school. [Appellant] asked her again if she wanted to make some money. She shook her head "yes." This time she was not blindfolded. [Appellant] took her to the basement and he laid on the bed. She was more nervous and "scared." He made her put her mouth on his penis and held her head so that it went up and down. She testified that after "sperm came out" he gave her money and told her to wash her mouth out. The Victim testified that she did not tell her mother because she was "scared."

About three or four years before the trial the Victim told her [sister] that [Appellant] had put his penis in her mouth. The sister did not believe the Victim. Later, in 2014 when she was no longer living with her mother she told her father and her grandmother what had happened. It was at a time where she was struggling and getting bad grades in school. Her mother was then informed

- 2 -

and the Victim went to the police with her parents and made a report in November of 2014. Detective Brian Pitts of the Darby Borough Police Department conducted a preliminary investigation but [Appellant] was not arrested until April 5, 2017 after an investigation was conducted by Child Advocacy Center and the Delaware County Division of Youth Services.

Trial Court Opinion, 10/3/18, at 5-6 (citations to notes of testimony and some identifying details omitted).

The jury rendered the guilty verdicts on March 23, 2018. On July 9, 2018, the trial court sentenced Appellant to a total of 9 to 18 years of incarceration, followed by a 13-year probationary period. Appellant filed a timely post-sentence motion, which the trial court denied. Appellant filed this timely appeal. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant presents a single issue for our review:

1. Whether the trial court abused its discretion in denying Appellant's post-sentence motion alleging that the guilty verdicts were against the weight of the evidence.

Appellant's Brief at 3.

In his sole issue, Appellant argues that the verdicts were against the weight of the evidence. This claim was properly preserved.[2] We therefore turn to the merits of Appellant's argument. We begin with our standard of

---

[2] In compliance with Pennsylvania Rule of Criminal Procedure 607, Appellant preserved his weight of the evidence claim by raising it with the trial court in a post-sentence motion for a new trial. Appellant's Post-Sentence Motion, 7/19/18, at unnumbered 1-2.

review:

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Id.* (citation omitted). Therefore, "[a]n appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence, as the trial judge is in the best positon to view the evidence presented." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted). To allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

Instantly, the jury convicted Appellant of IDSI, indecent assault, and EWOC. A person is guilty of IDSI with a child "when the person engages in

deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(b). Deviate sexual intercourse is defined at 18 Pa.C.S.A. § 3101, and occurs when a person "has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid . . ." 18 Pa.C.S.A. § 3126(a)(7). The Crimes Code provides that EWOC occurs when a "parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person . . . knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1).

In asserting that the trial court erred in denying his motion for a new trial based on his weight claim, Appellant states that the Victim's "testimony had serious inconsistencies and was lacking in credibility." Appellant's Brief at 5. Specifically, Appellant contends that defense exhibits presented to the jury showed "Appellant was not living with [Victim] while she attended fourth grade - the year that she stated she was certain that the assaults occurred," Victim "was inconsistent in her testimony," "[s]he did not speak of the alleged assault until 7 or 8 years later," and when "she finally made the disclosure/allegation to an adult, it was in response to being disciplined for misconduct." Appellant's Brief at 9. Appellant thus argues that his "guilty verdicts were not supported by the record" and are "shocking to the judicial conscious." *Id.*

The trial court explained its denial of Appellant's motion for a new trial as follows:

In his Statement of Errors Complained of on Appeal [Appellant] invites the [c]ourt to credit the testimony of [Appellant] and to discount the Victim's testimony. [Appellant] also urges the [c]ourt to re-weigh the evidence presented at trial so as to give added weight to evidence that he claims supports the conclusion that he could not have committed the offenses for which he was convicted. To review the jury's verdict in this fashion would be error. The verdict in this case does not "shock the conscience of the [c]ourt." Therefore, [Appellant] is not entitled to a new trial.

\* \* \*

[Defense] counsel cross-examined [] Victim thoroughly. He raised inconsistencies in her prior statement describing the timing of the assaults and her descriptions regarding the details of the assaults. He questioned her failure to report promptly or at least after [Appellant] left the home, her recollection of her age in fourth grade and whether she was in trouble at the time she reported the assaults to her father and grandmother. He questioned her regarding her relationship with her mother and asked how she used the money that [Appellant] gave her. Thus, inconsistent details in the Victim's account were put before the jury, and while her recall of some [of] the circumstances surrounding the assaults varied in some ways, her description of the assaults did not. The jury exercised its prerogative and performed its duty as the fact-finder, resolving the issues of credibility and conflicts in the evidence. Ultimately it determined beyond a reasonable doubt that [Appellant] was guilty of the offenses charged. The record supports this verdict and it should not be disturbed.

Trial Court Opinion, 10/3/18, at 4, 6-7 (citations to notes of testimony omitted).

Upon review, we conclude that the trial court did not abuse its discretion in denying Appellant's weight claim. The Victim testified that on two separate

occasions, when she was 11 or 12 years old and in the fourth grade, Appellant caused her to perform oral sex on him. N.T., 3/22/18, at 25, 27, 31-32, 34-36, 69-70. Appellant denied that these events ever occurred. N.T., 3/23/18, at 34. As noted by the trial court, defense counsel made multiple attempts to discredit the Victim's testimony on cross-examination. N.T., 3/22/18, at 45-54, 59-68, 70-71.

Appellant attacks the Victim's credibility on the basis that her testimony contradicts that of Appellant and is thus inconsistent. *See* Appellant's Brief at 9. However, it is well-settled that "the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses." ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080 (Pa. 2017). "[I]consistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence." ***Id.*** at 1081 (citation omitted). "Issues of witness credibility include questions of inconsistent testimony and improper motive." ***Id.*** (citation omitted). "A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." ***Id.*** (citation omitted). Additionally, "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." ***Commonwealth v. Charlton***, 902 A.2d 554, 562 (Pa. Super. 2006) (citation omitted).

Accordingly, we find no merit to Appellant's weight claim where the jury

acted properly as the fact-finder, and the trial court, in denying Appellant's request for a new trial based on the weight of the evidence, did not abuse its discretion. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/19